FILED IN CHAMBERS
U.S.D.C. Atlanta

DEC 0 1 2005

LUTHER D. THOMAS, Clerk
By: [signature] Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AMERICAN & FOREIGN INSURANCE
COMPANY,

    Plaintiff,

v.

NAJCO, INC., CAPITAL
RESTAURANTS, LLC, d/b/a
Carnegies, and NANCY BERLIN,

    Defendants.

CIVIL ACTION

NO. 1:03-CV-1658-RLV

O R D E R

This is a declaratory judgment action in which the plaintiff seeks a declaration of its rights and responsibilities with respect to a business property insurance policy issued to Najco, Inc. Pending before the court are the following motions: (1) the plaintiff's motion for a protective order [Doc. No. 39], (3) Najco's motion to compel [Doc. No. 63], (4) the plaintiff's motion for summary judgment [Doc. No. 67], (5) Najco's motion for additional discovery pursuant to Rule 56(f), Federal Rules of Civil Procedure [Doc. No. 74], and (6) Najco's cross motion for partial summary judgment [Doc. No. 76].

I. FACTUAL BACKGROUND[1]

On June 10, 1998, Najco entered into a lease agreement with Capital Restaurants whereby Najco leased certain shopping center property to Capital at a rental rate of $8200.00 per month. According to Najco, this rental rate was below the fair market rent because the premises were still under construction; therefore, the parties contemplated that Capital would perform certain build-out options to meet its specific needs and that such build outs would be done at Capital's expense.

In September 2000, Capital began paying less than half the full monthly rental payments, and Najco sent an eviction notice. After receiving this notice, Capital requested a temporary reduction and partial deferral of rental payments since it was experiencing cash flow problems at the restaurant. According to Mr. Lee Najjar, president of Najco, he agreed with Ms. Nancy Berlin, Capital's managing member, to reduce the monthly rental payments to $6000.00 for six months and $7000.00 for the following six months and to defer the unpaid portion of the rent until the end of the deferred-payment period.[2]

---

[1] The facts are restated from the court's order dated December 30, 2004.

[2] Although this agreement contemplated that Capital would have its rental payments reduced for a 12-month period, Mr. Najjar wrote

Capital, however, apparently failed to make the monthly rental payments as required. In the months leading up to December 2002, Najco and Capital had numerous discussions regarding the arrearage that Capital owed to Najco. Eventually, Najco informed Capital that the lease would be terminated if Capital did not pay the arrearage in full and begin paying the rental rate set out in the lease agreement. On December 10, 2002, Najco received a payment of $4500.00. At this point, according to Najco, Capital's indebtedness for unpaid rent was $74,725.78.

As a consequence of Capital's failure to make payment in full, on December 11, 2002, Najco directed that a Landlord's Notice to Vacate be hand delivered to Capital, demanding that Capital vacate the premises on or before December 17, 2002, unless the full rental arrearage was paid by December 16. As a follow-up to the Notice to Vacate, Najco had its attorneys hand deliver a letter dated December 13, 2002, to Capital, setting out the same demand that had been made in the Notice to Vacate. However, no further payments were made by Capital to Najco.

---

Ms. Berlin on April 24, 2001, informing her that "full rental is expected each month starting as of May 1, 2001 of $8200.00." The letter went on to say, "No more partial month payments will be accepted as of this date. . . . We would like [the arrearage] paid by the end of October 30, 2001 which mean [sic] an additional $2,600.00 needs to be paid each month. So your total rent for the next six months will be $10,800.00"

3

Between December 17 and December 27 Capital removed a substantial amount of equipment from the premises. The plaintiff characterizes the items removed as "trade fixtures" and "leasehold improvements." Najco contends that Capital "removed and damaged equipment, fixtures, and improvements." According to Najco, "Berlin and her subordinates utilized a welding company, a glass removal company, an air conditioner removal company, crowbars, and other tools to remove such permanently affixed items as floor tiles, carpeting, ceiling tiles, air conditioner compressor from the roof, stainless steel wall panels, sinks, toilets, doors, door frames, ceiling fans, light fixtures, a bar-counter top [sic], wall molding, kitchen equipment, and other improvements from the premises." Najco Inc.'s Brief in Opposition to the Insurance Company's Motion for Summary Judgment and Support of Najco's Cross-Motion for Partial Summary Judgment at 6.

On January 9, 2003, Najco submitted a claim to the plaintiff based upon the actions that occurred between December 17 and December 27, relying on policy language which covers "direct physical loss of or damage to all real and business personal property . . . in which [Najco] has an insurable interest." See Policy, § 1(b). Apparently, the plaintiff never officially denied

4

coverage under the policy. However, on June 13, 2003, the plaintiff filed this declaratory judgment action.

In the meantime, on January 17, 2003, Najco filed suit against Capital and Ms. Berlin in the State Court of Fulton County, Georgia, asserting claims for breach of contract and damage to the premises and improvements. Alternatively, the complaint seeks damages for trespass, damage to property, and conversion.

In its order dated December 30, 2004, the court noted resolution of the issues in this case turns on the application of state law. Consequently, the court stayed these proceedings until the state court had had the opportunity to resolve those issues. However, Najco, as the state-court defendant ultimately decided not to proceed any further in state court and, consequently, dismissed that action.[3] By order dated June 20, 2005, this court lifted the stay that had been previously imposed and reactivated the case.

## II. LEGAL DISCUSSION

Before proceeding to the substantive motions, the court will first dispose of the discovery-related motions. The plaintiff's

---

[3] According to the Notice of Conclusion of State Court Proceeding and Request to Reactivate This Matter, Najco determined that the state-court defendants did not have sufficient resources to respond to any money judgment that might be rendered against them and that proceeding with that case would be a waste of resources.

motion for protective order [Doc. No. 39], Najco's motion to compel production of documents [Doc. No. 63], and Najco's motion for additional discovery [Doc. No. 74] all relate to Mark E. Robinson, an attorney hired by the plaintiff to assist in evaluating Najco's insurance claim.[4]

In February 2003, the plaintiff retained Mr. Robinson and the law firm of Devlin & Robinson, P.C., to provide coverage analysis, furnish legal advice regarding Najco's claim for coverage, and to handle any litigation that might arise out of that claim. On April 27, 2004, Najco served the plaintiff's counsel with its notice of deposition of Mr. Robinson. The plaintiff responded by informing Najco that it considered any information known by Mr. Robinson to be protected by the attorney-client privilege and by the work-product doctrine. When the parties were unable to resolve this dispute, the plaintiff moved for a protective order, and Najco subsequently moved to compel production of documents, seeking production of documents generated by or as a result of Mr. Robinson's actions.

---

[4] Najco's motion for additional discovery is made pursuant to Rule 56(f) and seeks to have the court rule on the other two discovery motions if the court is inclined to grant the plaintiff's motion for summary judgment.

Najco seeks to avoid the attorney-client privilege embodied in Rule 26(b)(1) by arguing that Mr. Robinson was simply doing investigative work in the capacity of an insurance adjuster and that such work is not protected by the privilege. The court disagrees. From the material submitted to the court, it is clear that Mr. Robinson was not acting as a mere investigator but, instead, was performing the function of an attorney when he collected information regarding Najco's claim and then discussed this information with the plaintiff. Helping a company make a legal determination with respect to the issue of insurance coverage is the very reason why an attorney would be hired. The court concludes that the communications with Mr. Robinson are protected by the attorney-client privilege.

Additionally, the court holds that the material generated as a result of Mr. Robinson's efforts are protected by the work-product doctrine. That doctrine protects from discovery material prepared in anticipation of litigation. Discovery of such information is allowed only "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Rule 26(b)(3). Najco has failed to show that it is

unable to obtain the substantial equivalent fo the materials sought.

For the foregoing reasons, the plaintiff's motion for protective order is GRANTED; Najco's motion to compel is DENIED; Najco's motion for additional discovery is also DENIED.

The cross motions for summary judgment focus on language in the insurance policy which covers "direct physical loss of or damage to all real and business personal property in which [Najco] has an insurable interest" and on the following language in the lease between Najco and Capital Restaurants:

> At the expiration of the tenancy hereby created . . . [i]f [Najco] so elects, [Capital Restaurants] shall, at [Capital Restaurants'] expense, remove improvements [Capital Restaurants] has constructed in the Demised Premises.   [Capital Restaurants] shall remove all personal property and trade fixtures from the Demised Premises.

It is undisputed that Capital Restaurants install all of the items in the leased premises which it later removed. The cross motions ask the court to decide whether the items removed from the premises were trade fixtures or improvements.

Georgia law defines trade fixtures as "[a]rticles placed in or attached to the leased property by the tenant to facilitate the trade or business for which he occupies the premises, or to be used in connection with such business, or to promote convenience and

8

efficiency in conducting it." Chouinard v. Leah Enterprises, Inc. 205 Ga. App. 206, 207 (1992), quoting Black's Law Dictionary.[5] Georgia law permits a tenant to remove trade fixtures during the term of the lease; however, any trade fixtures remaining after the expiration of the lease are deemed abandoned and become the property of the landlord.  O.C.G.A. § 44-7-12.  Additionally, Georgia law does not permit a tenant to "remove permanent fixtures, or otherwise injure the property." O.C.G.A. § 44-7-11.

Stating these propositions of law, however, does not answer the questions before the court.  "[W]hether an article of personalty connected with or attached to realty becomes a part of the realty and therefore such a fixture that it cannot be removed therefrom, depends upon the circumstances under which the article was placed upon the realty" and when there is doubt as to whether an item is personalty or has become a fixture is generally for a

---

[5] *Chouinard* is also instructive because it holds that acceptance of rent during dispossessory proceedings does not extend the term of a lease and does not give the tenant the right to remove trade fixtures under such circumstances.  Najco agues that since it had given Capital Restaurants a Notice to Vacate if rent was not paid by December 17, the lease expired on that day.  The court concludes that the actions of the parties in this case are sufficient to raise a jury question as to the date on which the lease was actually "terminated."  A notice to vacate is not the same as dispossessory proceedings, and this court is unwilling to hold as a matter of law the notice to vacate  effected a termination of the lease.

jury to determine. United Federal Savings and Loan Ass'n of Waycross v. Connell, 166 Ga. App. 329, 330 (1983). Lay Brothers, Inc. v. Golden Pantry Food Stores, Inc., 273 Ga. App. 870 (2005), is not to the contrary. There was no contention in that case that the removal of a canopy damaged any property.

The plaintiff also argues that Najco's claims are barred by the policy's exclusion for "dishonest or criminal acts by . . . anyone to whom [Najco] entrusts the property for any purpose." The plaintiff cites no case where a court has held that a landlord "entrusts" his property to a tenant for purposes of that insurance exclusion. This court is unwilling to hold that a special relationship of entrustment is created simply by a landlord/tenant relationship.

Since the lease allowed Capital Restaurants to remove improvements only if Najco elected for it to do so and since there is a factual issue as to whether items removed by Capital Restaurants were trade fixtures that could be removed without damaging the realty, the court concludes that the parties are not entitled to summary judgment, with this one proviso. The court holds that the plaintiff had a reasonable basis to contest Najco's insurance claim. Therefore, Najco is not entitled to bad faith penalties or attorney's fees.

III. SUMMARY

The plaintiff's motion for a protective order [Doc. No. 39] is GRANTED; Najco's motion to compel [Doc. No. 63] is DENIED; the plaintiff's motion for summary judgment [Doc. No. 67] is GRANTED with respect to Najco's claim for bad faith penalties and attorney's fees but in all other respects is DENIED; Najco's motion for additional discovery pursuant to Rule 56(f)[Doc. No. 74] is DENIED; and Najco's cross motion for partial summary judgment [Doc. No. 76] is DENIED.

SO ORDERED, this 1st day of December, 2005.

ROBERT L. VINING, JR
Senior United States District Judge